## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 552 | **DATE** | 8/7/2003 |
| **CASE TITLE** | Inzer vs. Frantz | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss [5-1] is denied. Defendant is directed to answer the amended complaint by 9/2/03. Status hearing is set for scheduling conference on 10/2/03 at 9:30 a.m. In the meantime, parties are directed to meet in a effort to resolve this case short of trial.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 0 8 2003 date docketed | 13 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Mail AO 450 form. | 03 AUG -7 PH 6:25 | 8/7/2003 date mailed notice | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN INZER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 03 C 0552 |
| ) | Judge Joan H. Lefkow |
| ERNIE FRANTZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DOCKETED**
**AUG 0 8 2003**

## MEMORANDUM OPINION AND ORDER

Plaintiff, John Inzer ("Inzer"), has filed this patent infringement law suit against defendant, Ernie Frantz ("Frantz"), alleging that Frantz is liable for infringing United States Patent No. 4,473,908 (the "'908 Patent"). Inzer claims to be the exclusive licensee of the '908 Patent in the sports of power lifting and weight lifting and alleges that Frantz's infringement has caused him damages. Further, Inzer alleges, pursuant to 35 U.S.C. § 284, that he is entitled to treble damages because Frantz's violation constituted willful infringement. Jurisdiction is invoked over Inzer's claims under 28 U.S.C. §§ 1331 and 1338. Presently before the court is Frantz's motion to dismiss. For the reasons set forth below, the motion is denied.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. In determining whether subject matter jurisdiction exists, the court must accept all well pleaded facts alleged in the complaint as true, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999); *Meridian Rail Prods. Corp. v. Amsted Indus., Inc.*, No. 02 C 3708, 2002 WL 31103479, at *2 (N.D.

13

Ill. Sept. 18, 2002). "When evidence pertinent to subject matter jurisdiction has been submitted, however, 'the district court may properly look beyond the jurisdictional allegations of the complaint ... to determine whether in fact subject matter jurisdiction exists.'" *Sapperstein*, 188 F.3d at 855, quoting *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996) (internal citations omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate under Rule 12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on a 12(b)(6) motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

## BACKGROUND

At all relevant times Inzer was an individual residing in Longview, Texas who manufactured and sold equipment and products in the health and fitness industry, including garments used in the sport of power lifting. (Compl. ¶ 1.) On October 2, 1984, the '908 Patent, entitled GARMENT, was issued to Gabriele Knecht ("Knecht"). (Compl. ¶ 5.) The '908 Patent claims "a shirt in which the natural axis of the sleeves is set at a forward angle to the axis of the shoulders of the shirt, and the low point of the armhole of each sleeve is forward of the shoulder high point of the armhole so that, when worn, the shirt tends to pull the arms of the wearer

2

forward of the body." (Compl. ¶ 7.) The shirt's sleeves assist the wearer in the sport of power lifting when performing bench press lifts, and the shirts are sometimes called "bench press shirts." (*Id.*)

Inzer entered into a license with Knecht which states as follows,

> That Gabriele Knecht, Patent Holder, grants to John W. Inzer, Grantee, the exclusive right to the exclusion of Grantor and all others and concerns, to use this Patent for the limited purpose of manufacturing, distributing, and selling competitive athletic garments for the sports of powerlifting and weightlifting.

(Def. Ex. A.) Inzer alleges that the contract was an "exclusive license" from Knecht for the '908 Patent in the sports of power and weight lifting. Inzer therefore claims that he possesses the right to enforce and collect damages for infringement of the '908 Patent in those areas. (Compl. ¶ 6.) Inzer also alleges that during the period when the '908 Patent was still in force and licensed to him, Frantz infringed the patent by making, selling and offering for sale bench press shirts covered under the patent. (Compl. ¶ 9.)

Frantz's infringement of the '908 Patent was the subject of a prior patent infringement action in this court, case number 91 C 4228. (Compl. ¶ 10.) That case ended in a settlement and a Consent Judgment in 1996. Under the terms of that Judgment (Compl. Ex. B), Frantz admitted that he had sold infringing bench press shirts. (*Id.*) The settlement entitled Frantz to continue to sell such shirts for a limited time under license in exchange for payment of a royalty. (*Id.*) Inzer now alleges that Frantz continued to sell infringing slightly redesigned shirts beyond the expiration of the limited license. (Compl. ¶¶ 10-11.) Inzer also alleges that this violation of the '908 Patent constituted willful infringement because Frantz sold the shirts with full knowledge and callous disregard of the '908 patent and Inzer's rights as an exclusive licensee. (Compl. ¶

3

14.) Inzer contends that at all relevant times he complied with the marking and notice requirements of 35 U.S.C. § 287(a), and, therefore, he is entitled to damages including lost profits. (Compl. ¶¶ 15-16).

## DISCUSSION

Frantz argues that Inzer's complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because Inzer does not have standing and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted because Inzer did not plead compliance with the marking and notice requirements of 35 U.S.C. § 287(a).

### A. Standing

The question of standing has both constitutional and prudential components. Constitutional standing under Article III of the United States Constitution requires that only "cases or controversies" be entertained by courts. To establish constitutional standing a plaintiff must show (1) injury in fact, meaning an invasion of a legally protected interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the defendant's actions; and (3) that a favorable decision is likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Prudential limitations on standing include

> the general prohibition of a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

*Allen v. Wright*, 468 U.S. 737, 751 (1984).

4

By comparison, standing in a patent infringement case is derived from the Patent Act, 35 U.S.C. § 281. *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Calif., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001). That Act provides that "A patentee shall have remedy by civil action for infringement of his patent." Here, there is no dispute that Inzer is not the owner of the '908 Patent, but he does have certain rights in it under the license entered into with Knecht. Because he is not the owner of the patent but was granted some rights, Inzer could fall into one of three categories: (1) he could be the assignee of all rights under the patent; (2) he could hold an exclusive license in the patent; or (3) he could hold a bare or nonexclusive license in the patent. *Right-Hite Corp. v. Kelley Co. Inc.*, 35 U.S.P.Q.2d 1065, 1074 (Fed. Cir. 1995). The determination of whether Inzer has standing in this case depends on which of the three categories he fits into.

Where a patentee makes an assignment of all significant rights under a patent, the assignee is considered the "patentee" for the purposes of the Patent Act and "has constitutional standing . . . to sue another for patent infringement in its own name." *Intellectual Prop. Dev., Inc.*, 248 F.3d at 1345. Conversely, the holder of a non-exclusive license–a covenant by the patent owner not to sue the licensee for making, using or selling the patented invention–has no constitutional standing to bring suit under the Patent Act and may not even join a suit with the patentee "because a nonexclusive (or 'bare') licensee suffers no legal injury from the infringement." *Id.*

Somewhere between an "assignee" and the holder of a "bare license" is an "exclusive licensee." "An exclusive licensee receives more substantial rights in a patent than a nonexclusive licensee, but receives fewer rights than an assignee of all substantial patent rights."

5

*Id.* An exclusive licensee has standing to bring suit so long as the three *Lujan* elements of constitutional standing are met and the patent owner is joined, either voluntarily or involuntarily, in any suit brought by the exclusive licensee. *Id.* at 1346-48. Significantly, the principle that the patent owner be joined in a suit brought by the exclusive licensee having fewer than all substantial rights "is prudential rather than constitutional." *Id.* at 1348.

The parties agree that Inzer is not an assignee of all the rights under the '908 Patent and that he does not have the right to sue under his own name. Inzer, however, claims the license with Knecht is an exclusive license and he is, therefore, able to sue so long as the constitutional standing requirements are met and Knecht is included as a co-plaintiff. For this second prudential requirement, Inzer amended his complaint to add the patentee, Knecht, as a co-plaintiff. Frantz, on the other hand, argues that the license between Inzer and Knecht is a bare license for which Inzer cannot sue regardless of whether he adds Knecht as a co-plaintiff.

To be an exclusive licensee, "a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Right-Hite Corp.*, 35 U.S.P.Q.2d at 1074. The proprietary rights granted by a patent are "the rights to exclude others from making, using, or selling the invention in the United States." *Ortho Pharm. Corp.* v. *Genetics Inst., Inc.*, 52 F.3d 1026, 1031-32 (Fed. Cir. 1995). An exclusive license exists when "the license makes the licensee a beneficial owner of some identifiable part of the patentee's bundle of rights to exclude others." *Id.* at 1032. On the contrary, a bare license would exist "[i]f the party has not received an express or implied promise of exclusivity under the patent, i.e., the right to exclude others from making, using, or selling the patented invention . . . ." *Right-Hite*

6

*Corp.*, 35 U.S.P.Q.2d at 1074. In such situations the licensee receives "only the patentee's promise that that party will not be sued for infringement." *Id.*

To resolve the issue of whether Inzer was an exclusive or bare licensee, the court "must examine the licensing agreement to determine whether the parties intended to effect a transfer of proprietary rights to the licensee as an incident to protection of its interests." *Ortho Pharm. Corp.*, 52 F.3d at 1032. Frantz argues that Inzer is a "bare licensee" because Inzer does not own the patent and his license agreement with Knecht does not transfer the "right to sue" or the resulting remedies. Frantz contends that in order for an exclusive license to exist there must be a "right to prevent others" from making, using or selling the patent. In order to have this "right to prevent others" from using the patent, Frantz submits that the license must grant the licensee the right to sue, which the license at issue here does not do. According to Frantz, because by it terms the license is for the limited purpose of "manufacturing, distributing, and selling" the patent at issue in the sports of power lifting and weight lifting, Inzer is "inherently excluded from other activities such as suing or collecting remedies."

In response, Inzer argues that Frantz incorrectly concludes that an exclusive license must expressly grant the right to sue for infringement in order to have co-plaintiff standing. Instead Inzer maintains that an exclusive license is achieved with simply the patentee's express or implied promise that others shall be excluded from practicing the invention contrary to the licensee's proprietary interests. Inzer points out that the license at issue grants all of the patent owner's statutory rights to exclude others, including even the patent owner, from making, using or selling the patented invention in the sports of power lifting and weight lifting. Further, Inzer argues that the phrase "limited purpose" in the licensing agreement merely defines the exclusive

7

field of use, and it does not limit Inzer's exclusive rights within that field. For these reasons, Inzer argues that he must be held to be an exclusive licensee within the granted field of use and has standing to sue as a co-plaintiff with the patentee.

In support of his assertion that Inzer lacks standing, Frantz relies heavily on *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 876 (Fed. Cir. 1991). The issue in that case, however, was not whether a grant of rights under a patent formed an exclusive or bare license but rather whether it constituted an assignment or an exclusive license. *Id.* at 873. In concluding that the grant of rights was an assignment for which the assignee was not required to join the patentee as a co-plaintiff, the court noted that the agreement specifically transferred the "right to sue." *Id.* at 875. The court found that portion of the agreement "particularly dispositive" in concluding that the agreement was an assignment because the "question confronting the court is whether [the assignee] can bring suit on its own or whether [the patentee] must be joined as a party." *Id.* Contrary to Frantz's suggestion, this case does not support its argument that the "absence of language granting a right to sue . . . should similarly be dispositive" of the issue here. The inclusion of the right to sue language in *Vaupel* created an assignment, not an exclusive license. Indeed, if the agreement at issue in *Vaupel* lacked the "right to sue" language the court might have been persuaded that the agreement was an exclusive license rather than an assignment. *See also, Mentor H/S Inc. v. Medical Device Alliance*, 240 F.3d 1016, 1018 (Fed. Cir. 2001) (noting that "in light of [the patentee's] substantial retained rights, particularly its initial right and obligation to sue for infringement, we conclude that [the grantee] did not receive all substantial rights in the patent [and is thus an exclusive licensee]."); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000) (concluding that agreement

8

between the parties was an assignment and not an exclusive license and noting that "[e]ven though [the patentees] retained the right to sue, that right would not hinder [the assignees'] enjoyment of the patent rights in any meaningful way."); *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (finding that agreement was an exclusive license rather than an assignment because, among other reasons, "although [the exclusive licensee] has the option to initiate suit for infringement, it does not enjoy the right to indulge infringements, which normally accompanies a complete conveyance of the right to sue.").

In *Ortho Pharm. Corp.*, the Federal Circuit addressed the same issue the court confronts here of whether an agreement is an exclusive or bare license. The agreement in *Ortho Pharm. Corp.* gave the grantee the nonexclusive right to use and sell the patented product "at one location in the United States." 52 F.3d at 1034. In concluding that the agreement was nothing more than a bare license, the court noted that the patentee "had the right to license others" to also sell the invention in the location provided to the grantee. *Id.* at 1033. Therefore, because the grantee had "only a nonexclusive right to use [the patent] at one location in the United States," the court concluded that the agreement was a bare license. *Id.* at 1034 Significantly, the agreement granted the "bare licensee" the right to sue. The court minimized the significance of this clause and noted that "a right to sue clause cannot negate the requirement that, for co-plaintiff standing, a licensee must have beneficial ownership of some of the patentee's proprietary rights. A patentee may not give a right to sue to a party who has no proprietary interest in the patent." *Id.* at 1034.

A review of this case law counsels the conclusion that Inzer holds some of the proprietary interests in the patent and can sue so long as the patentee is a co-plaintiff, notwithstanding the

agreement lacking any express "right to sue" that Frantz finds dispositive. The agreement expressly provides that Inzer has the right "to the exclusion of Grantor and all others" to use the patent for the limited purpose of manufacturing, distributing and selling the shirts for the sports of power lifting and weight lifting. The use of the term "limited purpose" properly illustrates that Inzer does not have all rights under the patent but only the right to manufacture, distribute or sell the shirts for the sports of power lifting and weight lifting. Moreover, in contrast to *Ortho Pharm. Corp.*, the agreement is not limited in geographic territory and does not otherwise give the patentee the ability to license others to have the same rights. Here Inzer is the only party that has the right to make, use or sell the products in the sports of power lifting and weight lifting. In addition, a limited "field of use" (*i.e.*, in the sports of power lifting and weight lifting) is different from an exclusive geographic territory. *See, e.g., Independent Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459 (1926) (concluding that a licensee of exclusive right to use and sell patented invention "for radio purposes" was permitted to sue for infringement and join patent owner). Finally, the "right to sue" for which Frantz argues is not dispositive. Sufficient proprietary rights were transferred in the license to the exclusion of others to illustrate that Inzer is an exclusive licensee.

Since Inzer is an exclusive licensee, he may maintain this suit so long as the *Lujan* factors for constitutional standing are met and Knecht, the patent owner, is added as a co-plaintiff. In terms of the *Lujan* factors, it is apparent that Inzer meets the requirements for constitutional standing. Because he has the exclusive right to make, use, and sell the shirts in the "field of use" of power lifting and weight lifting, Inzer is "constitutionally injured by another entity that makes, uses or sells the invention" in those areas. *Intellectual Prop. Dev. Inc.*, 248 F.3d at 1346.

10

Further, Inzer's injury is directly related to Frantz's infringement and meets the "fairly traceable" standard of causation. *See id.* at 1347. Inzer's injury is also redressable because Inzer may recover damages against Frantz pursuant to 35 U.S.C. § 284. *Id.* Thus, the *Lujan* factors for constitutional standing are met.

Finally, Inzer has amended his complaint to add Knecht as a co-plaintiff, thereby fulfilling the requirement that an exclusive licensee can sue only as a co-plaintiff with the owner of the patent. Frantz, in a last ditch effort to show that no standing exists, asserts that standing must exist on the date the lawsuit was filed and cannot be fixed by adding or substituting a party. *See Lujan*, 504 U.S. at 571 n.4. While this is certainly true for constitutional standing, as mentioned above the joining of a patentee as a co-plaintiff is a prudential limitation on standing. Only constitutional standing is required from the outset of a suit. *Intellectual Prop. Dev. Inc.*, 248 F.3d at 138-49. The court in *Intellectual Prop. Dev. Inc.* addressed and rejected this very argument. The court noted that "this court has recognized the principle that a patent owner may be joined by an exclusive licensee" so long as the licensee meets "the constitutional requirements for standing from the outset of its suit." *Id.* Thus, Frantz's argument on this ground is rejected.

For the reasons stated above, Frantz's motion to dismiss for lack of standing under Rule 12(b)(1) is denied.[1]

---

[1] Frantz also apparently argues that this case should be dismissed under Rule 12(b)(6) because Inzer cannot be afforded relief due to the fact that he is not the patent owner. However, as exclusive licensee he is entitled to recover damages so long as he sues with the patentee as a co-plaintiff. *See Intellectual Prop. Dev. Inc.*, 248 F.3d at 1347 ("Indeed, this court has awarded damages to exclusive licensees as compensation for patent infringement injuries."). This argument, therefore, is rejected.

11

B.  Marking and Notice Requirements

Frantz argues that Inzer's complaint should be dismissed because Inzer has not pled compliance with the notice and marking requirements under 35 U.S.C. § 287(a). Frantz argues that because the patent at issue has expired, only monetary, as opposed to injunctive, relief may be sought. Under § 287(a), monetary relief is available only if either (1) constructive notice has been provided to the infringing party through patent marking on all patented products or (2) specific actual notice has been provided by the patentee. *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1326-27 (Fed. Cir. 2001).

It is no doubt true that the patentee bears the burden of proving compliance with the marking and notice provisions by a preponderance of evidence. *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). It is also true, however, that at this stage of the litigation the Federal Rules require only a "short and plain statement of the claim." Fed. R. Civ. P. 8(a). Inzer's statement in his complaint concerning notice and marking was that "[a]t all times relevant hereto, Inzer has complied with the notice and marking requirements of 35 U.S.C. § 287(a)." (Compl. ¶ 15.)

Starting with the issue of marking, Frantz is correct that the "constructive notice provisions" must be in "full compliance," that is, its marking must be "substantially consistent and continuous." *American Med. Sys., Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993). However, whether the marking or "constructive notice provisions" have been met is a question of fact. *Nike, Inc.*, 138 F.3d at 1446. To the extent that Frantz urges dismissal on grounds that the complaint states only that Inzer complied with the marking requirements and Knecht did not, its motion is denied. The court cannot say that Inzer can prove no set of facts

12

showing that it fully complied with the marking requirements.

In regard to actual notice, Frantz claims that actual notice is required from the patentee, which Frantz alleges Inzer has not pled and cannot prove. *See Lans*, 252 F.3d at 1328. Inzer, in response, cites to a case that allows for an exclusive licensee and not a patentee to provide actual notice under the statute. *See Aspex Eyewear, Inc.* v. *E'Lite Optik, Inc.*, No. Civ.A. 398CV2996D, 2002 WL 1751381, at *27 (N.D Tex. April 4, 2002). Given its conclusion that marking is a question of fact, the court need not definitively decide this issue on this motion. These issues surrounding marking and notice are best left for resolution on summary judgment or at trial. Thus, Frantz's motion is denied.

## CONCLUSION

For the reasons stated above, Frantz's motion to dismiss is denied [#5]. Frantz is directed to answer the amended complaint by September 2, 2003. A scheduling conference will be held on October 2, 2003 at 9:30 a.m. In the meantime, the parties are directed to meet in an effort to resolve this case short of trial.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: August 7, 2003

13